Estate of Carl Rosenbaum, Clara Rollins, formerly known as Clara Rosenbaum, Helen E. Bache, Ernest C. Rollins and Alfred L. Rose, Executors v. Commissioner.
Estate of Rosenbaum v. Commissioner
Docket No. 2711.
United States Tax Court
1944 Tax Ct. Memo LEXIS 130; 3 T.C.M. (CCH) 925; T.C.M. (RIA) 44289; August 29, 1944
*130 Harold H. Levin, Esq., for the petitioners. Ellyne E. Strickland, Esq., and Ned Fischer, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding involves an estate tax deficiency of $99,033.28. Some of the issues raised by the pleadings have been settled by stipulation, some have been waived by petitioners, and some have been conceded by the respondent in his brief. The questions remaining for our determination are: (1) Whether there should be included in the gross estate as a transfer in contemplation of death the value of certain assets, consisting of accounts receivable from a corporation, which in 1931 decedent transferred to a trust, created on November 4, 1931, for the benefit of his wife and children. (2) Whether there should be included in the gross estate the amount of a note, $61,753.67, which decedent's son gave him in 1933, representing the amount of monies which decedent had advanced to the son from time to time since 1918. (3) Whether certain shares of stock of McCrory Stores, of which decedent's wife was the owner of record at the time of his death, were properly included in his gross estate. (4) Whether the respondent *131 has correctly valued certain real estate located in New York City and securities which decedent owned at the time of his death. General Facts The decedent died testate on December 14, 1938, a resident of the City of New York. His will was admitted to probate in the Surrogates Court, New York County. On December 29, 1938, letters testamentary were duly granted by the court to petitioners Clara Rollins, also known as Clara Rosenbaum, Helen E. Bache, Ernest C. Rollins, and Alfred L. Rose. On June 14, 1940, a Federal estate tax return was filed for the decedent's estate with the collector of internal revenue for the third district of New York by the executors named above. The return showed a gross estate for basic tax in the amount of $261,986.95 from which the petitioners deducted $199,655.32, leaving a net estate for basic tax of $62,331.63. The net estate for additional tax was reported in the amount of $122,331.63. Upon audit of the estate tax return the respondent determined a total tax payable in the amount of $111,832.36. Inasmuch as the petitioners had reported a total tax of $12,799.08, which had been assessed, a deficiency in the amount of $99,033.28 was determined. 1. *132 - Whether Transfer in Trust of November 4, 1931, Was in Contemplation of Death Facts. - On November 4, 1931, the decedent created a trust transferring to his wife, his son, Ernest C. Rollins, and his daughter, Helen E. Bache, as trustees, certain debts owed to him by the 35th Street and Fifth Avenue Realty Co. in the principal amount of $161,083.33, together with accrued interest thereon of $129,162.87, making a total of $290,246.20. The income of the trust was to be paid to his wife for life. After her death the income was to be paid in equal shares to the donor's son and daughter for their lives and upon the death of either, his or her portion of the corpus was to go to his or her living descendants or, if there were none, to the living descendants of the donor. The donor reserved the right to amend the trust so as to change the powers of the trustees and to substitute new trustees but not the power to change the beneficiaries or the proportionate interests of the beneficiaries in the income or corpus. At the time the trust was created the decedent was 76 years of age and was in good health. In 1929 he had visited a physician for a general check-up at the suggestion of his *133 wife but for 10 years prior to that time he had not been under a physician's care. He had periodic check-ups by his physician from year to year after 1929. In September, 1933, decedent had an attack of chills and fever which the physician attributed to gall stones. This condition required surgical treatment in 1935. The decedent had retired from active business prior to 1925. In 1907 the decedent, his brother, Selig Rosenbaum, and the decedent's attorney acquired a parcel of land located at 35th Street and Fifth Avenue, New York City. They erected a building thereon which they leased for a period of 21 years from 1908. They each advanced large sums of money for the acquisition of the property and the erection of the building. In 1919 a corporation was organized to hold and operate the property. Its capital stock was issued in equal shares to the wives of the three co-adventurers. Decedent's brother and his attorney transferred all of their interest in the corporation, including the indebtedness for monies advanced in the acquisition and improvement of the property, to their wives. In 1928 or 1929, decedent's brother persudaded his wife to create a trust of the wife's interest in *134 the corporation for the benefit of their children. In 1931 the decedent consulted his attorney, Alfred L. Rose, the son of his and his brother's co-adventurer in the real estate transaction, about creating a trust of his interest in the corporation for the benefit of his wife and children. He told Rose that he had long been considering making a gift to his wife of all of his interest in the corporation; that he had not previously done so because he thought the corporation might sell its property and he did not want his wife to have the responsibility of handling a large amount of money which she would receive from the sale; that his brother's wife had created such a trust for the benefit of her children and he desired to create a similar trust for his wife and children. Accordingly, the trust of November 4, 1931, referred to above, was created. The decedent transferred to the trustees his claim against the corporation for $290,246.20, as stated above. In determining the deficiency herein the respondent has included that amount in decedent's gross estate as a transfer made in contemplation of death. The transfer in question was not made in contemplation of death. Opinion. - *135 Our only question in respect of this issue is whether the transfer made to the November 4, 1931, trust was made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926, as amended by section 803 (a) of the Revenue Act of 1932. The pertinent provisions of the statute are as follows: "SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated - "(a) To the extent of the interest therein of the decedent at the time of his death; * * * * *
"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in *136 conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title." The phrase "in contemplation of death" as used in section 402 (d) of the Revenue Act of 1918, which for all practicable purposes was the same as the corresponding language of the Revenue Act of 1926, was under consideration by the Supreme Court in , where the Court said: "* * * It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. * * * Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect *137 at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be "contemplated," that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *" The Court further said: "* * * The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is "near at hand." "If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed. As illustrating *138 transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made "for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision." The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge most obligations. The gratification of such desires may be a more compelling motive than any thought of death. "* * * There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily *139 and mental condition, and thus to give effect to the manifest purpose of the statute. * * * It is sufficient if contemplation of death be the inducing cause of the transfer whether or not death is believed to be near. * * *" [Emphasis supplied.] The respondent admits that the decedent, at the time he created the trust in 1931, was in good physical condition for a man of his age. He contends, however, that the creation of the trust was a substitute for a testamentary disposition of that portion of the decedent's estate. He points out that the decedent was an old man in 1931; that the beneficiaries of the trust were the natural objects of his bounty; and that the decedent made a similar disposition of the remainder of his property in his will, which was executed September 9, 1937. Both the trust instrument and the will were drafted by the decedent's attorney, Alfred L. Rose, who was also named as one of the executors of the estate. He testified as follows: "Now, will you tell us of the conversation you had with Mr. Rosenbaum, just prior to the time when this trust was created? "A. Well, Mr. Rosenbaum came to my office about that time and told me he had decided to create a trust *140 of which the principal would be the indebtedness of the 35th Street & 5th Avenue Realty Company to him as shown on his books, and he gave me the particulars that he wanted to have included in the trust instrument, and asked me to draw it. He told me at that time, and it was really in confirmation of previous conversations, that we had had periodically, that he was doing this because of the fact that originally it had been intended that the three participants were doing this for their respective wives, that my father and his brother had carried out - when I say his brother, I mean the decedent's brother - had carried out the original intention by conveying on the original date to their respective wives their interests, that the stock of the corporation and the book indebtedness ran in favor of the wives and not in favor of themselves. That he carried out the same plan except - only to the extent of the stock ownership up to that time, but that he had always had it in mind to fulfill the other. "That one of the fears that he had had was that it might be that the building would be sold, that the proceeds then would be devoted to the payment of these debts, and that that would give the *141 respective ladies a large sum of cash money, and to his wife if she were one of them that owned the indebtedness, she would come into possession of a large amount of cash, and that he had never desired. "That his brother, Mr. Selig Rosenbaum, some years before this conversation, had persuaded his wife, Mrs. Selig Rosenbaum, having the same thought in mind that I have just described, to create a trust of her interest in this corporation, which she during her life would get the income, and would remain to her son if living, or issue if he should be dead at the time of her death." He also testified that decedent told him that his wife was dissatisfied that he had not made the same plans for her with respect to his interest in the property in question that the other co-adventurers had made for their wives. We do not think the fact that the decedent in creating the trust made a disposition of property similar to that which he made of other property in his will necessarily indicates a testamentary disposition of the trust property. The transfer of property to an irrevocable trust for the benefit of others usually constitutes a final disposition of the property as complete as a disposal *142 of it by will. Such a transfer is not necessarily in contemplation of death as that term has been defined. The evidence is that the decedent transferred his interest in the accounts receivable from the 35th Street and Fifth Avenue Realty Co. in fulfillment of a promise which he had theretofore made to his wife. According to the testimony of his attorney decedent's wife had asked him several times to carry out the promise which he had made to her, pointing out that the two other co-adventurers in the real estate deal had transferred all their interest in the corporation to their wives. The Supreme Court has recognized in , that transfers are not necessarily in contemplation of death where "There may be the desire to recognize special needs or exigencies or to discharge moral obligations," and that "The gratification of such desires may be a more compelling motive than any thought of death." We hold upon the evidence that the transfer was not made in contemplation of death within the meaning of the statute. II. - Note for $61,753.67 Given to Decedent by His Son for Monies Advanced Facts. - During the period 1918 *143 to February 1, 1933, the decedent advanced monies to his son, Ernest C. Rollins, from time to time in the aggregate amount of $61,753.67. Of that amount approximately $35,500 was advanced during 1931, 1932, and 1933 to assist the son in paying the debts of a partner. The son has been a member of the New York Stock Exchange since 1918. From about 1929 to 1933 the son was having marital difficulties. He and his wife had separated and his wife was demanding alimony. At decedent's request the son gave him a note in the amount of $61,753.67, representing the monies which the decedent had advanced to him, so that the wife would not be able to get it. After several reconciliations the son and his wife were divorced in 1943. On February 1, 1933, the decedent wrote to his son as follows: "My dear Boy "I have advanced you moneys at different times amounting up to today to $61,753.67 Sixty one thousand seven hundred fifty three 67/100 Dollars - which I declare herewith are a birthday present for your last birthday. "Your loving father "To Ernest C. Rollins 52 Broadway N. Y. City" In 1920 the decedent gave his daughter, Helen E. Bache, a demand promissory note in the amount of $50,000; *144 he gave her a like note for $50,000 in 1927. He paid interest monthly upon these notes up to the date of his death. He told his daughter that the notes were given to equalize, approximately, gifts of money which he had made to his son over a period of years. The note in question was not an asset of the decedent's estate. Opinion. - As to this issue the respondent's contention is that the note which decedent's son gave him representing the advances which decedent had made to the son over a period of years should be included in decedent's gross estate at its face value of $61,753.67. It is respondent's position that the so-called advances to the son were loans and that the note in question was given to decedent as evidence of the loans. The son testified that the advances were intended as gifts at the time they were made and that he gave the note to the decedent only for the purpose of defeating any claim that his, the son's, wife might make against him. We think that the evidence shows that it was never the intention of the parties that the note should be paid. Other parties interested in the settlement of the estate never claimed that the note was an asset of the estate. *145 The letter which the decedent wrote to his son on February 1, 1933, stating that he was making the son a gift of the monies advanced to him and the gifts which the decedent made to his daughter to offset the advances made to the son indicate that the advances were gifts and that the note was never intended to be paid. We think that the respondent erred in including the amount of the note in the decedent's gross estate. III. - Shares of McCrory Stock Facts. - In the estate tax return the executors reported 100 shares of McCrory Stores 6 percent preferred stock at a value of $9,150. They stated in the return, however, that they had not been able definitely to determine whether this stock belonged to the decedent and was a part of his gross estate. The transfer agent for the stock was the Guaranty Trust Co. of New York. Its records show that no shares of this stock were ever registered in the name of the decedent; that 100 shares were registered in the name of Clara Rosenbaum; and that she was the owner of record from May 12, 1936, to October 19, 1940. Clara Rosenbaum received the dividends upon the stock. The shares of stock in question were the property of Clara Rosenbaum *146 at the date of the death of the decedent and were not assets of the estate of the decedent. Opinion. - The evidence of record sustains petitioners' contention that the shares of stock in question belong to Clara Rosenbaum and not to the decedent. The decedent was not a stockholder of record of any McCrory Stores 6 percent preferred stock at the date of his death. The dividends on the shares in question were all paid to Clara Rosenbaum. The respondent contends in his brief that the evidence does not overcome the correctness of his determination that the decedent was the beneficial owner of the shares. We are of the opinion, however, that the evidence does satisfactorily show that the shares were the property of Clara Rosenbaum and were not an asset of decedent's estate. IV. - Valuation of Certain Assets of the Estate Facts. - At the date of his death the decedent was the owner of the premises located at 142-144 Greene St., New York City. There was a mortgage on the property of $61,000. The executors of the decedent satisfied the mortgage by a payment of $23,000. In November, 1943, the property was sold for $25,000 with a down payment of $5,000 cash. The executors returned *147 the property at a value of $20,000. In the determination of the deficiency the respondent increased the valuation to $23,000, the amount which the executors had paid to have the mortgage lifted. In 1940, prior to the filing of the estate tax return, the executors had an appraisal made of the property. The appraisal showed a fair market value of the property in 1938 of $20,000. The fair market value of the property at the date of the death of the decedent was $23,000. Also in the estate tax return the executors reported $10,000 face value of New York Title & Mortgage Co. Series F-1 first mortgage participation certificates at a value of $5,223.75, and $20,000 face value of New York Title & Mortgage Co. Series N-67 first mortgage participation certificates at a value of $8,300. In the determination of the deficiency herein the respondent increased the valuations to $6,965 and $16,000, respectively. The securities in question were not listed on any exchange but were the subject of over-the-counter sales. The Series F-1 first mortgage participation certificates were quoted on December 10, 1938, at 52 7/8 bid, 53 7/8 asked. On December 17, 1938, the quotation was 49 bid, 50 1/2 asked *148 (ex-interest at 3 percent). The Series N-67 certificates were sold in October, 1938, at 41 and 42 and on February 8, 1939, at 39. The fair market value at the date of the death of the decedent of the $10,000 Series F-1 certificates was $5,300 and of the $20,000 Series N-67 certificates $8,300. Opinion. - The petitioners contend that the value of the real estate located at 142-144 Greene Street, New York City, was $20,000 instead of $23,000, as determined by the respondent. This value is based upon the testimony of a real estate appraiser who was employed to appraise the property for estate tax purposes. The respondent valued the property at the amount which the executors paid to satisfy the mortgage against it at the date of decedent's death, namely, $23,000. The evidence does not show whether the decedent was personally liable on the mortgage. It is not explained why the mortgagee was willing to cancel the $61,000 indebtedness for only $23,000. On the evidence before us we are of the opinion that the respondent has correctly valued the property. In determining the value of the above described securities we have accepted the value placed on them by the Commercial and Financial *149 Chronicle. The values so determined are shown above. Decision will be entered under Rule 50.